In re:  Case No. 12-57540

ANTHONY VEGA,  Chapter 13

        Debtor.  Judge Thomas J. Tucker
_____/

**OPINION REGARDING DEBTOR'S MOTION FOR SANCTIONS**

**I. Introduction**

This Chapter 13 case is before the Court on the Debtor's motion entitled "Debtor's Motion for Sanctions Pursuant to 11 U.S.C. § 362(k)(1)" (Docket # 22, the "Motion"). The Debtor seeks compensatory and punitive damages, and an award of attorney fees, against a creditor, B & R Auto Repairs and Towing, LLC ("B&R"). Before Debtor filed bankruptcy, B&R made repairs to Debtor's car, and refused to release the vehicle back to the Debtor until the repairs were paid for. For about a month after B&R first learned of the bankruptcy filing, B&R refused Debtor's demands to release the vehicle. Debtor claims that B&R willfully violated the automatic stay.

The Court held an initial hearing on the Motion on October 11, 2012, and allowed the parties to conduct discovery. The Court then held an evidentiary hearing on the Motion, on March 25, 2013 and April 1, 2013. The parties then filed post-hearing briefs. The Court has considered all of the testimony and exhibits admitted into evidence at the evidentiary hearing, and all of the parties' oral and written arguments.

This opinion states the Court's findings of fact and conclusions of law regarding the Motion. For the reasons stated below, the Court concludes that B&R did not violate the

automatic stay, because it had a right to retain possession of the Debtor's vehicle under 11 U.S.C. § 362(b)(3), in order to perfect and maintain B&R's common law, possessory lien in the vehicle. As a result, Debtor's Motion will be denied.

## II. Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case and over this contested matter, under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a)(E.D. Mich.). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(K), and 157(b)(2)(O). *See also Amedisys, Inc. v. Nat'l Century Fin. Enters., Inc.* (*In re Nat'l Century Fin. Enters., Inc.*), 423 F.3d 567, 573-74 (6th Cir. 2005)(proceedings to enforce the automatic stay are "core" proceedings).

This proceeding also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *see id.*, including the provisions of Bankruptcy Code § 362 that are discussed in this opinion. And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See id.* at 27.

## III. Discussion

### A. Facts

Some of the facts relevant to this dispute are disputed and some are not. There are some

2

12-57540-tjt    Doc 89    Filed 06/20/13    Entered 06/20/13 14:51:37    Page 2 of 9

sharp conflicts in the evidence, particularly between the testimony of the Debtor and the testimony of Reda M. "Ray" Bazzi, the owner of B&R. The Court's findings of fact in this opinion reflect the Court's considered view of the conflicting evidence.

On or about April 17, 2012, the Debtor, Anthony Vega ("Debtor") and B&R made an agreement, which was partly in writing and partly oral, under which B&R was to do specified repair work on Debtor's 1998 Buick Century automobile, consisting primarily of replacing the engine. The agreed price was $1,863.78.

Debtor and B&R agreed that Debtor was to pay the $1,863.78 price for the repairs according to the following schedule: a $100.00 "down payment," which Debtor paid to B&R on April 19, 2013, followed by payments every two weeks thereafter, each in the amount of at least $100.00, until the $1,863.78 price was paid in full.

The parties' agreement did not include any requirement that the car repairs be completed before the Debtor's required bi-weekly payments were to begin and were to continue.

The parties' agreement did include a term to the effect that the Debtor could have possession of the car and drive the car, after the repairs were completed, *if* Debtor timely made the bi-weekly payments required by the parties' agreement.

From at least April 19, 2012 until September 19, 2012, when B&R gave possession of the vehicle back to the Debtor, B&R had continuous possession of Debtor's vehicle. At no time between the dates of April 19, 2012 and September 19, 2012 did B&R ever voluntarily or unconditionally give up possession of the Debtor's vehicle, to Debtor or to anyone else.

On April 17, 2012, B&R picked up Debtor's vehicle from Debtor's home and took it to B&R's shop. That same day, B&R prepared a written estimate for the repairs, in the amount of

3

$1,863.78. Also that same day, B&R allowed Debtor to take the vehicle home. But at that time, the repairs on the vehicle had not yet been made, and certainly had not yet been completed.

On April 19, 2012, Debtor brought the vehicle back to B&R's shop, in order for B&R to do the agreed repair work. At that time, Debtor signed the written estimate/repair order (Debtor's Ex. 2; Creditor's Exs. J, L);[1] paid the $100.00 "down payment," and authorized B&R in writing to do the repairs. B&R began doing the repair work on the vehicle on that day.

Debtor lost his job in April 2012, sometime after April 19, 2012. Without a valid legal excuse, the Debtor failed to make the bi-weekly payments when and as required by the parties' agreement. Debtor made no payments after the initial $100.00 "down payment" on April 19, 2012, until June 26, 2012. (Under the parties' agreement, installment payments were due no later than the following dates: May 3, May 17, May 31, and June 14, 2012, and every two weeks thereafter.) After the initial $100.00 "down payment," Debtor paid B&R only the following sums: $200.00 on June 26, 2012; and $200.00 on July 10, 2012.

As a result of Debtor's failure to make payments as required by the parties' agreement, as described above, B&R had no contractual obligation to give possession of Debtor's vehicle back to Debtor at any time after B&R began doing the repair work on April 19, 2012.

In early June 2012, B&R test-drove Debtor's vehicle, and the vehicle broke down, in a Lowe's parking lot, after B&R's closing time. B&R left the vehicle in the Lowe's parking lot overnight, intending to pick it up the next day. But the local police towed the vehicle and impounded it. The next day, with the Debtor's cooperation, assistance and consent, but at B&R's

---

[1] The sections that are filled in on Creditor's Exs. J and L, entitled "Special Repairs" and the section right below it, on the lower left side of the page, were not filled in when Debtor signed the document on April 19, 2012. *See* Debtor's Ex. 2.

expense, B&R was able to recover the vehicle from the impound lot, and take it back to B&R's shop. B&R completed the agreed repairs on Debtor's vehicle well before Debtor filed this bankruptcy case.

Debtor filed his Chapter 13 bankruptcy petition in this case on July 30, 2012. In mid-August 2012, after Debtor's bankruptcy case was filed, the Debtor, through his counsel, began making demands that B&R return Debtor's vehicle to Debtor. B&R refused to do so, until after the Debtor filed the Motion and B&R obtained counsel. On September 19, 2012, B&R allowed the Debtor to retake possession of the vehicle, and B&R has not had possession of the vehicle since that time.

On the date Debtor filed his bankruptcy petition, and thereafter, Debtor still owed B&R $1,363.78 for B&R's repair work on the vehicle.

### B. B&R's common law lien under Michigan law

Beginning on April 19, 2012, when B&R began doing the repair work on Debtor's vehicle, and at all times thereafter until September 19, 2012, when B&R returned possession of the vehicle to the Debtor, B&R had a common law lien on Debtor's vehicle under Michigan law, to secure payment of all sums due from the Debtor for the repair work. *See Nickell v. Lambrecht*, 185 N.W.2d 155, 158-59 (Mich. Ct. App. 1970).[2]

B&R's common law lien was a possessory lien, in that it could be perfected and

---

[2] The Court in *Nickell* held that the common law lien survived the enactment of, and is in addition to the statutory lien provided by, the Garage Keeper's Lien Act, Mich. Comp. Laws § 570.301, *et seq.*, "and, accordingly, a repairman may rely on the common-law lien even though he has not complied with the statutory requirements or formalities." 185 N.W.2d at 158 (footnote omitted). In this case, the Court finds it unnecessary to discuss or decide whether, when, or to what extent B&R also had a statutory lien under the Garage Keeper's Lien Act.

maintained by B&R only by B&R maintaining continuous possession of the vehicle. *See id*; *Joy Oil Co. v. Fruehauf Trailer Co.*, 29 N.W.2d 691, 693-94 (Mich. 1947); *In re Lott*, 196 B.R. 768, 775-76 (Bankr. W.D. Mich. 1996).

B&R did maintain continuous possession of Debtor's vehicle, as that concept is defined by Michigan common law, from April 19, 2012 until September 19, 2012. The incident involving B&R's leaving the stalled vehicle in the Lowe's parking lot overnight, and then obtaining the vehicle back the next day from the police, did not break B&R's continuous possession for purposes of maintaining B&R's common law lien. As the *Joy Oil Co.* and *Lott* cases, cited above, indicate, the lien claimant must unconditionally surrender possession of the vehicle in order to lose the possessory lien. That did not happen in this case, until September 19, 2012. Nor did Debtor ever regain possession of the vehicle during this Lowe's parking lot incident.

### C. Bankruptcy Code § 362(b)(3)

At all times after Debtor filed his bankruptcy petition on July 30, 2012, until B&R voluntarily returned possession of the vehicle to Debtor on September 19, 2012, B&R had a right to retain possession of Debtor's vehicle. At no time did the automatic stay under 11 U.S.C. § 362(a) require B&R to relinquish possession of the vehicle. This is because of 11 U.S.C. § 362(b)(3), which states, in pertinent part:

> (b) The filing of a petition under section 301, 302, or 303 of this title, . . . does not operate as a stay –
> 
> . . .
> 
> (3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such

perfection under section 546(b) of this title . . ..

B&R's retention of possession of the vehicle was an "act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title," within the meaning of § 362(b)(3). As a result, B&R did not violate the automatic stay of § 362(a) by retaining such possession.

The "trustee's rights and powers are subject to such perfection under section 546(b) of this title," within the meaning of § 362(b)(3), because the Michigan law that gave B&R a possessory lien in Debtor's vehicle is "generally applicable law" of the type described in 11 U.S.C. §§ 546(b)(1)(A) and (B). Section 546(b)(1) states:

> (b)(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that –
> 
> (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or
> 
> (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

Both the Michigan common law on liens, discussed above, and Michigan statutory law (Michigan's Uniform Commercial Code, Mich. Comp. Laws § 440.9333), gave B&R's possessory lien in Debtor's vehicle priority and effectiveness against any entity that acquired rights in Debtor's vehicle before the date on which B&R acquired and perfected (by possession) its lien in Debtor's vehicle. *See Nickell*, 185 N.W.2d at 158-60 (the common law lien has

7

12-57540-tjt    Doc 89    Filed 06/20/13    Entered 06/20/13 14:51:37    Page 7 of 9

perfection under section 546(b) of this title . . ..

B&R's retention of possession of the vehicle was an "act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title," within the meaning of § 362(b)(3). As a result, B&R did not violate the automatic stay of § 362(a) by retaining such possession.

The "trustee's rights and powers are subject to such perfection under section 546(b) of this title," within the meaning of § 362(b)(3), because the Michigan law that gave B&R a possessory lien in Debtor's vehicle is "generally applicable law" of the type described in 11 U.S.C. §§ 546(b)(1)(A) and (B). Section 546(b)(1) states:

> (b)(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that –
>
> (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or
>
> (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

Both the Michigan common law on liens, discussed above, and Michigan statutory law (Michigan's Uniform Commercial Code, Mich. Comp. Laws § 440.9333), gave B&R's possessory lien in Debtor's vehicle priority and effectiveness against any entity that acquired rights in Debtor's vehicle before the date on which B&R acquired and perfected (by possession) its lien in Debtor's vehicle. *See Nickell*, 185 N.W.2d at 158-60 (the common law lien has

priority over a pre-existing security interest in the vehicle); Mich. Comp. Laws § 440.9333;[3] *cf. Eaton v. River City Body Shop* (*In re Eaton*), 220 B.R. 629, 630-31 (Bankr. E.D. Ark. 1998)(reaching a similar result under Bankruptcy Code §§ 362(b)(3) and 546(b)(1), based on Arkansas lien law).

The Debtor has correctly conceded, in substance, that if, as the Court has now found, B&R had a valid possessory lien in Debtor's vehicle as of the date of Debtor's bankruptcy petition, then § 362(b)(3) applied, so that B&R did not violate the automatic stay under § 362(a) by thereafter retaining possession of Debtor's vehicle. (*See* Debtor's Reply Br. [etc.], filed November 26, 2012 (Docket # 37) at 4 ("If Creditor's possession is the maintenance of the perfection of a lien, then Creditor appears to fall within the safe harbor of § 362(b)(3).").)

For these reasons, the Court concludes that Debtor has failed to meet his burden of

---

[3] B&R's common law lien in Debtor's vehicle is a "possessory lien" in goods within the meaning of this Michigan U.C.C. section. Section 440.9333 gives such possessory lien priority over a pre-existing security interest in the vehicle:

> **440.9333. Priority of certain liens arising by operation of law**
>
> Sec. 9333. (1) As used in this section, "possessory lien" means an interest, other than a security interest or an agricultural lien, that meets all of the following:
>
> (a) It secures payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person's business.
>
> (b) It is created by statute or rule of law in favor of the person.
>
> (c) **Its effectiveness depends on the person's possession of the goods.**
>
> (2) **A possessory lien on goods has priority over a security interest in the goods unless the lien is created by a statute that expressly provides otherwise**.

Mich. Comp. Laws § 440.9333 (emphasis added).

proving, by a preponderance of the evidence, that B&R violated the automatic stay under 11 U.S.C. § 362(a). To the contrary, the Court finds that B&R did *not* violate the automatic stay. So Debtor's Motion must be denied.

### D. Debtor's conversion argument

Debtor has argued that B&R committed a conversion of Debtor's vehicle by retaining possession of it until September 19, 2012. But this argument is both irrelevant and without merit. It is irrelevant because it has no bearing on the issue of whether B&R violated the automatic stay under 11 U.S.C. § 362(a). And it is without merit because, as the Court has found in this opinion, B&R had a right to retain possession of Debtor's vehicle under Michigan law. So B&R did not commit any conversion of Debtor's property, or of any property of the bankruptcy estate.

### E. B&R's request for sanctions

B&R has requested sanctions against Debtor's attorney and Debtor for allegedly filing and prosecuting the Motion in bad faith. The Court will deny B&R's request, however, because the Court finds that the Motion was neither frivolous nor pursued in bad faith.

## IV. Conclusion

For the reasons stated in this opinion, the Court will enter an order denying Debtor's Motion. The order will also deny B&R's request for sanctions.

**Signed on June 20, 2013**  /s/ **Thomas J. Tucker**
**Thomas J. Tucker**
**United States Bankruptcy Judge**